July 25, 1999

TO: P.H.S.

Dear P.H.S.

On July 16th I was seen by Mental Health per request of the Deputy Warden to ascertain my mental condition. This was due to my informing the administration of a potential hunger strike as of July 28th. After discussing with Mental Health the reason for this strike being that I am being unlawfully detained and no one will address it, I was asked to contact P.H.S. if in fact the strike became necessary. Since no one all the way to the Attorney General's Office has been able to justify me being here, I find that I must take steps to bring this to light. I will as of 6:00 AM on the 28th not eat nor drink as long as I am here. Also there is a factor that I have not had prescribed blood pressure since I ran out on the 8th. I am not quite sure what effect this will have but I do think that it should raise some concerns. I'm sorry to be a bother to you.

Respectfully Yours,

Sherman A. Carter
#102896
DOB: 8/15/50

T-2

RECEIVED
JUL 28 1999

PLAINTIFF'S
EXHIBIT NO. 61

you hope to convince tax payers that your are so out of touch with existing law. Even civil attorneys are required to stay on top of existing law. Here the laws are not new.

There is no doubt that McBride of the Record's Department is liable for her actions or lack of same. I am aware that in order to establish liability on the part of the Deputy Warden, the Warden, and the Commissioner, I must show that these defendants "policy makers" established a state process that will deprive inmates of liberty interest without due process. Commissioner, could only be held liable for failure to release inmate where showing of specific supervisory practice and specific finding that the custom and practice which was in place created an unreasonable risk of prison over stays. I'm sure you remember a recent news article that lambasted the DOC's Records Departments for mis-interpretations of sentences throughout the state. Clearly all were aware but no one acted to correct this problem. [Deliberate indifference].

You first letter to me named numerous people that apparently with their small mindedness took my files and sat on them in order to feel tailer, and then past them on to the next small minded person. You said that you also sent my copy of my Rule 35(a) to the Criminal Division. They had already been furnished this in

compliance with Superior Court Rules. In doing so the Deputy
Attorney General had a duty as does you not to further harm me.
In this motion I presented controlling law from both the Supreme
Court of the United States and also Delaware's own Supreme Court
as recent as June 2nd. Let us put this all into prespective. You
want me and the world to believe that everybody in the DOJ, is
incapable of realizing the accurracy of my position.

Your Appeal's Department was handed it's head by this state's
highest court on the dates of June 12,1998, and August 10,1998. In
both these appeals your office was informed by decision that "all
time previously served must be credited". Further upon receipt of
these rulings your appeal's attorneys had to inform the Records
Department of the ruling and direct that this was the law of not
only this state but the country. Strangely enough the DOC, con-
tinued to violate inmate's rights by mis-interpreting sentences,
and the almighty DOJ, continued to assist in the attempts to cover-
up the violations. This can be substantiated by the case of Wayne
T. Gambie, No 407,1996. "this court has consistently held that a
defendant must be given Level V credit for all prior time actur-
ally served at Level V incarceration when further incarceration
at Level V is imposed after a probation violation" is this not the
case here that is causing you so much difficulity. It is my con-
tention that I can make a fair case that your office is engaged in

the usage of policy, customs, and or practices that are designed to conceal errors by the DOC, that violate due process. I don't think you want to try to convince a Court or jury that you and the boys are so ignorant to the laws of this state and country. I know that it would not be an easy task to prove, but I know, I do have some very stronge inferences of your boss being aware of the improper actions of her staff. If I am made to walk off the remainder of this 40 odd days, I will upon being released present to the media my claims including naming your involvement and your boss as to the systematic cover-up. When the media checks with it's legal department, I'm sure they will agree the story is news worthy. Put with my alligations the enormous amount that will be sought, I know I'll get some notice.

I want to remind you that by the time you receive this I will have begun my hunger strike. You will undoubtedly be hearing from people that you wish not to hear from. So will Senator Vaughn, and numerous others who have tried to ignor this. As I've stated in my hand written letter to you recently, this can be resolved, but only if you stop thinking I and the District Court are fools.

Sherman A. Carter

cc: Attorney General M. Jane Brady
    Gov. Tom Carper
    Lt. Gov. Minner
    Senator Vaughn
    Rep. Al O. Plant
    U.S. District Court

xc: *Warden*
*Deputy Warden Burris*
*Deputy Warden McGuigan*
*Major Cunningham*
*IR99-3688*
7/30/99 CF



**STATE OF DELAWARE**
**DEPARTMENT OF CORRECTION**
## OFFICE OF THE WARDEN
## DELAWARE CORRECTIONAL CENTER
Smyrna Landing Road
SMYRNA, DELAWARE 19977
Telephone: (302) 653-9261
Fax: (302) 653-2855

*received*
*Burris*
*7·30·99*

## MEMORANDUM

TO:        Major Holman

FROM:      Robert E. Snyder
           Warden

DATE:      July 29, 1999

RE:        Inmate Sherman Carter

---

It has come to my attention that the above mentioned inmate is going on a hunger strike.  Please get with your staff and advise them to keep a check on inmate Carter's actions.  Keep this office informed.

RES/sw

*Warden Snyder;*
*attached is the Incident*
*Report and a letter from Inmate*
*Carter which indicate he*
*has no intention of going on a*
*hunger strike. When Carter was*
*faced with the prospect of*
*transfer to the Infirmary, he*
*said it wasn't worth the trouble.*

*Maj. D. Holman*
*7·28·99*

PLAINTIFF'S
EXIBIT NO. 63

STATE OF DELAWARE
DEPARTMENT OF CORRECTION

INCIDENT REPORT

*D.W. — No further action was required. The Warden was advised of the inmate's desire to go on a hunger strike. HH 7/29*

PRINT or TYPE

REPORT # PR-99-3688    DATE: 7-29-99    PAGE ___ OF ___

1. FACILITY/SECTION: DCC
2. LOCATION: 7-2
3. OCCURRED: Mo/Day/Yr 7-29-99   Time Approx 1430

4. TYPE OF INCIDENT: Alleged Hunger STR

5. PERSONS INVOLVED:  S-1, S-2 Subject;   V-1, V-2 Victim

| CODE | NAME, TITLE or STATUS |
|------|----------------------|
| S-1 | Carter, Sherman J/m 00102846 |
| RP | Hall, Anthony C/o |

RECE[IVED]

JUL 3[0]

SECU[RITY]
SUPERIN[TENDENT]

*Cathy,   Done 7/30
Copies of these to Warden DW's + CAC3
Thank You
DKH 7-29-99*

6. INJURIES? YES ( ) NO (✓) NATURE: X/A
7. HOSPITALIZED? YES ( ) NO (✓) WHERE? NA
8. EVIDENCE   DISCOVERED BY: NA   SE[
   YES ( ) NO (✓) TYPE: NA
9. FORCE USED YES ( ) NO (✓) PHYSICAL ( ) CHEMICAL ( ) STU...
   RESTRAINTS USED YES ( ) NO (✓) TYPE:
10. IMMEDIATE ACTION: Written Statement + 404 Submitted

11. DESCRIPTION OF INCIDENT:
COD.      On the above date and time I C/o A. Hall ordered J/m Sherman Carter To come back to the Bldg. from work (Law-Library). I asked I/m Carter if he was going on a hunger strike. I/m Carter, stated No he wasn't. Lt Parter Notified of situation and Talked To major Holman. A written statement and 404 submitted To Major Holman Security chief.

NOTE: I/m Carter stated to myself Lt Pat that he does not want to go as far as going to The Psw Ward when he heard that's where he would be housed he said Forget it.
                                        (FOR CONTINUATION USE FORM 404-B)

12. NOTIFIED/REFERRED TO: Major Holman

13. REPORTING PERSON'S NAME & TITLE: Anthony Hall C/o

14. REPORTING PERSON'S SIGNATURE: Anthony Hall

15. FOLLOW-UP: YES ( ) NO ( )
    COMMENTS:

16. REVIEWER'S NAME & TITLE: Maj. D. Holman

17. REVIEWER'S SIGNATURE: Maj. D. Holman

FORM #: 404-A   WHITE - SHIFT COMMANDER   YELLOW - INTERNAL AFFAIRS   PINK- REPORT WRITER
REVISED 5/92

PLAINTIFF's EXIBIT NO. 64

FORM #585

## MEDICAL GRIEVANCE

FACILITY: __D.C.C.__                              DATE SUBMITTED: __July 30th 99__

INMATE'S NAME: __Sherman A. Carter__            SBI#: __00102896__

HOUSING UNIT: __T-2__                            CASE #: _____

///////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////

SECTION #1

DATE & TIME OF MEDICAL INCIDENT: __7/29/99__    14:20 hours

TYPE OF MEDICAL PROBLEM:

On the above date, I was called back to my housing unit, and told to pack my belongings. I was to be placed in what is deemed the "Ram Room". This was due to my undertaking a hunger strike to protest my being illegally held by DOC. I had on July 16th been called to Mental Health per request of the Deputy Warden to ascertain my mental stability. My position was accepted by Mental Health. My complaint is that there was no justifacation for being threatened with segregation of any type. I was only able to avoid segregation by discontinuing my peaceful strike. It is my legal opinion that Nurse Dotty McNary had no authority to order my move into segregation.

GRIEVANT'S SIGNATURE: _Sherman A. Carter_    DATE: _July 30, 1999_

ACTION REQUESTED BY GRIEVANT: __I wish to be made aware of what policy of PHS gives a nurse the authority to order such actions were there is no threat of violence to myself nor anyone else. As a citizen of this country who claims to be illegally detained my rights to peaceful demonstration are protected.__

DATE RECEIVED BY MEDICAL UNIT: _____

NOTE: EMERGENCY MEDICAL CONDITIONS WILL TAKE PRIORITY. OTHERWISE, MEDICAL GRIEVANCES WILL BE ADDRESSED AT THE WEEKLY MEDICAL COMMITTEE MEETING.

PLAINTIFF'S EXHIBIT NO. 65

| POLICY OF | POLICY NUMBER | PAGE NUMBER |
|---|---|---|
| STATE OF DELAWARE | 3.8 | 1 OF 2 |
| DEPARTMENT OF CORRECTION | RELATED ACA STANDARDS: | |
| CHAPTER: 3-PROGRAMS AND SERVICES | SUBJECT: TREATMENT & REHABILITATION PROGRAMS | |
| APPROVED BY THE COMMISSIONER: | | |
| EFFECTIVE DATE: | January 1, 1998 | |

I.    **AUTHORITY:**    11 Del. C. 6504, 6517, 6524, 6531.

II.    **PURPOSE:**    To establish a process for the participation of offenders in DOC managed and/or proposed treatment and rehabilitation programs.

III.    **APPLICABILITY:**    All DOC employees, volunteers, persons or organizations conducting business with the Department and all offenders under the supervision or custody of the Department.

IV.    **DEFINITION:**

Treatment and Rehabilitation Programs - Comprehensive educational and behavior modification with the focus of stabilizing the offender and making appropriate referrals for a continuum of treatment.

V.    **POLICY:**

A.    The Department of Correction (DOC) may require all offenders ordered to its custody or supervision as a result of a sentencing order, detention order, bail condition or Court/Attorney General's diversion program to participate in appropriate treatment and rehabilitation programs.

B.    All sentenced offenders committed to the Bureau of Prisons will be evaluated as part of the Reception and Diagnostic Unit (RDU) process or the classification process. Each offender in need of treatment and rehabilitation will be classified to a program that meets the offender's designated security level and therapeutic needs. Offenders who refuse treatment/rehabilitation or who behave in a way which results in their removal from a program shall further be subject to such other disciplinary measures as established in DOC Policy 4.2 (Rules of Conduct).

PLAINTIFF's EXHIBIT NO. 66

| STATE OF DELAWARE<br>DEPARTMENT OF CORRECTION | POLICY NUMBER<br><br>3.8 | PAGE NUMBER<br>2 OF 2 |
|---|---|---|
| SUBJECT: TREATMENT & REHABILITATION<br>PROGRAMS | | |

C.   All offenders sentenced or released to the supervision of the Bureau of Community Corrections shall be assessed for treatment and rehabilitation needs through the receiving facility/section intake process. Each offender shall be required to cooperate and complete appropriate Court/Parole Board/DOC ordered treatment and rehabilitation programs. Offenders who fail to cooperate with and/or complete an ordered treatment or rehabilitation program shall be subject to established Bureau administrative and legal actions up to and including citing the offender for violation of supervision.

D.   The Bureau of Prisons and the Bureau of Community Corrections will each develop separate procedures to implement this policy.

## ACTUAL TIME UNDER TRUTH IN SENTENCING

| SENTENCE | CLASS | ACTUAL LEVEL V WITH ALL ALLOWABLE GOOD TIME CREDIT | | |
|---|---|---|---|---|
| 30 days | Unclass. Misd. (max) | | | 22½ days |
| 6 months | Class B Misd. (max) | | 4 mos., | 21 days |
| 1 year | Class A Misd. (max) | | 9 mos., | 12 days |
| 2 years | Class G Fel. (max) | 1 yr., | 6 mos., | 12 days |
| 3 years | Class F Fel. (max) | 2 yrs., | 3 mos., | 12 days |
| 4 years | - - - | 3 yrs., | ---- | 17 days |
| 5 years | Class E Fel. (max) | 3 yrs., | 9 mos., | 7 days |
| 6 years | - - - | 4 yrs., | 6 mos., | 22 days |
| 7 years | - - - | 5 yrs., | 3 mos., | 22 days |
| 8 years | Class D Fel. (max) | 6 yrs., | ---- | 22 days |
| 9 years | - - - | 6 yrs., | 9 mos., | 22 days |
| 10 years | Class C Fel. (max) | 7 yrs., | 7 mos., | ---- |
| 15 years | Class A Fel. (min) | 11 yrs., | 4 mos., | 2 days |
| 20 years | Class B Fel. (max) | 15 yrs., | 1 mo., | 7 days |
| 25 years | Class A Fel. | 18 yrs., | 10 mos., | 12 days |
| 30 years | Class A Fel. | 22 yrs., | 7 mos., | 17 days |
| 45 years | Class A Fel. | 32 yrs., | 11 mos., | 12 days |

Note: The last 6 months may be served at a work release center or halfway house but the first 5 days of any Level V sentence must be served at Level V, and for sentences of less than 1 year the Court may order that more than 5 days be served at Level V before the Department of Correction may place the offender at Level IV.

NAB:pn
xc:  File (TISCHART)

PLAINTIFF's
EXIBIT NO. 67

| | Statutory Penalty | Fine | TIS Recommended Penalty | Mandatory Penalty | Lose Lic |
|---|---|---|---|---|---|
| Poss Needle/ Syringe | 0-30 days | $0-500 | FCR | = | - |
| Poss of Drug Para. | 0-1yr | $0-2300 | 0-1yL2 | - | - |
| Poss Non-Narc 2nd Offense | 0-1yr 0-2yr | $0-1000 " | 0-1yL2 0-6mL3+6mL2 | - - | 2y " |
| Poss Narc 2nd Offense | 0-1yr 0-3yr | $0-2300 " | 0-1yL2 0-6mL3+6mL2 | - - | 2y " |
| Maint Veh/ Dwel | 0-3yr | $0-3000 | 0-21mL2 | - | 3y |
| Poss W/I 1000' Narc Non Narc | 0-30yr 0-15yr | $0-250,000 " | 3-9mL5 " | - - | - - |
| PWID/Del Non Narc Prior T-16 Of | 0-5 yr 0-5 yr | $1000-10,000 " | 0-15mL5 - | - 3y | - - |
| PWID/Del Nar Prior T-16 Off 2nd Offense | 0-10yr " 30-90yr | $5000-50,000 " " | 0-30mL5 - - | - 5y 15y | 3y " " |
| Traff Coc/PCP 5-50 gms. 50-100 100-gms. | 2-20yr " " | $50,000 $100,000 $400,000 | - - - | 3y 5y 15y | 3y " " |
| Traff MJ 5-100lbs 100-500lbs 500lbs | 2-20yr " " | $25,000 $50,000 $100,000 | - - - | 3y 5y 15y | 3y " " |
| Traff Opiate 5-15grms 15-50grms 50+ grms | 2-20yr " " | $75,000 $150,000 $750,000 | - - - | 3y 10y 25y | 3y " " |

## DISCOVERY MATERIAL REQUESTED

(a) Plaintiff was evaluated by professionals  for his drug
use on four separate occassions from early 1990's up to 1997.
What was the conclusion drawn by these professionals as to need
for confrontational group treatment. And upon Plaintiff's com-
mitment in 1997 provide proof that compliance to D.O.C. Policy
3.8 V. B was in existence when Plaintiff was classified to con-
frontational treatment. Include any, and all Diagnostic informa-
tion used. Plaintiff is sure that Counsel will contend that this
information has no bearing, however Counsel utilized a sworn
statement from a treatment giver, along with the fact that Plain
tiff refused said treatment in an attempt to put Plaintiff in a
unfavorable light.

(b) Plaintiff requested the names of Deputy Attorney Generals
who had represented and advised the Department of Corrections
during the periodes when previous cases were decided establish-
ing that credit must be given for all time spent at Level V.
Plaintiff contends that Defendants claim that they had no know-
ledge is either untrue or D.O.C's Legal representitives failed
to do their jobs.

(c) On the day that Plaintiff discontinued his hungerstrike
he was made to sign a 404 incident report. Also the Housing unit
officer complied with Plaintiff's request that he enter in the
Log book the reason why. Both documents should be part of the
record and should be produced.

(d) Any and all documents, memos, inter departmental cor-
respondence, note or any other written or electronic materials
that have any mention of Plaintiff's illegal detention.

PLAINTIFF's
EXIBIT NO.*68*

Del.C. Title 11 §4205
      (a) A sentence of incarceration for a felony shall be a definite sentence.

      (b) The term of incarceration which the court may impose for a felony is

fixed as follows:  (6) For a class F felony up to 3 years to be served at Level

5.

Del. C. Title 11 §1448

      Possession of a deadly weapon by person prohibited; (c) Possession of a

deadly weapon by a person prohibited is a class F felony.

Del. C. Title 11 §3901

      (a) When imprisonment is a part of the sentence, the term shall be fixed,

and the time of its commencement and ending specified.

      (b) All sentences for criminal offenses of persons who at the time sen-

tence is imposed are held in custody in default of bail, or otherwise, shall

begin to run and be computed from the date of incarceration for the offense

for which said sentence shall be imposed, unless the person sentenced shall

then be undergoing imprisonment ubder a sentence imposed for any other offense

oroffenses, in which case the said sentence shall begin to run and be computed,

either from the date of imposition thereof or from the expiration of such other

sentence or sentences, as the court shall, in its discretion, direct.

      This section, requiring the specification of the commencement and ending
of a sentence, simply prescribes a rule of mathematical convenience as a matter
of descriptive detail. In the event of conflict between the quantum of the sen-
tence imposed and the date of termination, the former controls. Frye v. State,
Del. Supr.,236 A.2d 424(1967).

      The word quantum, by definition means, A specified portion of something.

      The word maximum, by definition means, The greatest possible quanity, degree

or number. An upper limit stipulated by law or other authority.

PLAINTIFF'S
EXIBIT NO.69

The word statutory by definition means, Relating to a statute; created or defined by a statute; required by a statute; conforming to a statute.