IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SHERMAN CARTER | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 99-757-JJF |
| v. | ) |
| | ) |
| Attorney General, M. JANE BRADY, | ) |
| Commissioner, STANLEY TAYLOR, | ) |
| Warden, ROBERT SNYDER, | ) |
| Records Supervisor, REBECCA McBRIDE | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT COMMISSIONER STANLEY TAYLOR'S RESPONSE
TO PLAINTIFF'S INTERROGATORIES**

**GENERAL OBJECTIONS**

1. Defendant Taylor objects to "instructions for responding" in which the definition of "you" may be construed to include the plural. Since this infers that others may be capable of providing information in response to the interrogatory posed, defendant Taylor may be unable to answer such interrogatory involving the terms "you." Said defendant can only answer these interrogatories with respect to his own personal knowledge. He has no idea how other persons might answer these interrogatories.

2. Defendant Taylor objects to these interrogatories in that they are overly broad in that they encompass unlimited time frames and seek irrelevant or immaterial information.

3. Defendant Taylor objects to these interrogatories in that they require the production of irrelevant information and information that is not reasonably calculated to lead to the discovery of admissible evidence.

4. Defendant Taylor objects to these interrogatories in that they are framed more in the

PLAINTIFF'S
EXIBIT NO. 70

form of an admission or call for legal conclusions.

## RESPONSES

1. When a Court ruling is handed down that effects [sic] the working of some aspect of the Department of Corrections:

(a) Are there procedures that notify you as Commission? [sic]

RESPONSE: The Commissioner's Office is routinely made aware of any cases within the jurisdiction that may impact upon operating procedures for the State Department of Correction.

(b) Does the Attorney General assign as Legal Counsel for D.O.C. a member of the D.O.J. to provide legal instruction, and or advice, as to what effect such decision will have as to the legal responsibility of D.O.C.?

RESPONSE: There are several Deputy Attorneys General assigned to represent the Department of Correction for the purposes of providing legal representation and advice when circumstances warrant same.

(c) Based on the failing of the procedures or lack of in place prior to 1998, and after, what steps did you as Commissioner undertake to protect the Constitutional rights of the Plaintiff, and all others in similar circumstances?

RESPONSE: Defendant Taylor objects to this interrogatory on the grounds stated above. More specifically, said Defendant objects in that this interrogatory sets forth or calls for legal conclusions and is apparently based upon or infers facts which are not supported by the record in this case. Further, said Defendant denies that any procedures in place regarding the calculation or computation of sentences either before or after 1998 "failed" to protect the Constitutional rights of the Plaintiff. Any and all computations or calculations of record were done pursuant to BOP 7.1 and 11 Del. C. §§3901 and 4381.

2. Plaintiff either wrote directly, or copied you as to his attempts to gain review of subject sentence. Why was no inquiry initiated by your office?

RESPONSE: Defendant Taylor is not personally aware of any attempts by Plaintiff to gain review of Plaintiff's sentence. If any attempts to make contact were made in writing, they would have been routinely referred by the Commissioner's administrative staff to the appropriate facility and/or records custodian for review and investigation.

3. Are there within the D.O.C. policy, customs, or practices, known by you that creat [sic] a atmosphere of due process violations to inmates within you [sic] custody?

RESPONSE: Defendant Taylor objects to this interrogatory on the grounds stated above. More specifically, said Defendant objects in that this interrogatory sets forth or calls for legal conclusions and is apparently based upon or infers facts which are not supported by the record in this case. Further, said Defendant denies that any Departmental policies or procedures in place regarding the calculation or computation of sentences either before or after 1988 were known to or created an atmosphere of due process violations as to the Plaintiff or any other incarcerated individuals. Any and all computations or calculations of record were done pursuant to BOP 7.1 and 11 Del. C. §§3901 and 4381.

4. Is it normal for all that transpired at D.C.C. pertaining to Plaintiff's attempts at gaining review, to have gone on for over a year and you not be aware, or no one to have acted?

RESPONSE: See response to interrogatory number two above. In addition, once DOC personnel were made aware of the alleged problem, the appropriate contact was made with the Court for clarification of the sentence in question and the recalculation/recomputation was taken under advisement thereafter following judicial authorization by the sentencing judge.

5. Are there in place new procedures that protect inmates in similar situations from due

process violation such as discribed [sic] in the action at hand?

RESPONSE: Defendant Taylor objects to this interrogatory on the grounds stated above. More specifically, said Defendant objects in that this interrogatory sets forth or calls for legal conclusions and is apparently based upon or infers facts which are not supported by the record in this case. Further, said Defendant denies that any procedures in place regarding the calculation or computation of sentences either before or after 1998 caused due process violations as to the Plaintiff. Any and all computations or calculations of record were done pursuant to BOP 7.1 and 11 Del. C. §§3901 and 4381. By way of further answer, said Defendant states that upon any inquiry from the appropriate judicial officer as to the term of sentence imposed, the appropriate review is undertaken by DOC personnel to ensure the validity and accuracy of said computation of sentence.

_____
Commissioner Stanley W. Taylor, Jr.

**AS TO OBJECTIONS,**

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

_____
STUART B. DROWOS, I.D. No. 427
Deputy Attorney General
Carvel Office Building
820 North French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400

Attorney for Defendants

Dated:

I:\STUART\Carter, Sherman\INTERRORGATORYTAYLOR.WPD

DEFENDANT MCBRIDE'S RESPONSE TO
PLAINTIFF'S INTERROGATORIES

1(a)   Either before or since your promotion to Supervisor of the Records Department did you or do you have personal knowledge of the need for a recalculation of a inmates sentence due to similar errors as was the situation in the Plaintiff's case?

   RESPONSE: Do not recall any such case(s).

1(b)   To your knowledge did either the Commissioner or Warden, either personally, or through a member of their respective staffs, implement any policy or instruction to make those responsible for calculation of sentences fully aware of the proper application of applicable law?

   RESPONSE: BOP 7.1
   Title 11, Subsection 4381 & 3901 (statute)

1(c)   After the rulings in Collick v. State and Warren v. State, what steps did you put into place to protect inmates from violation of their rights to due process?

   RESPONSE: Have no knowledge.

2   After Plaintiff contacted the Delaware State Police requesting that a criminal charge be brought against you, why did you attempt to have plaintiff removed from his job, rather than investigate the accuracy of the original claim?

   RESPONSE: I made no attempt to have plaintiff removed from said job.

   I had investigated and corresponded with Plaintiff on the accuracy of the original claim from 3/99 through 8/99 and made necessary changes as court set forth on 8/2/99 by The Honorable Haile L. Alford, which had been received by the Records Department on 8/3/99.

3   What special training had you received that provided you with legal knowledge that gave you a better understanding of the legal interpretation of a sentence to the degree that you ignored input from a member of the legal community?

   RESPONSE: Training from previous Records Supervisor. Coordination and communication with Pre-sentencing Officers of the Courts. Communication and guidance from said sentencing Judge(s) to ensure that the order set forth is accurate and interpretation of said order is followed by order set forth by the Judge(s) and Court(s). Communication and guidance on statute with Attorney General's Office and the Department of Corrections Deputy Principal Assistant.

   There was and never has been any request from a member of the legal community ignored.

4       Since the inception of Plaintiff's civil action, are you aware of any new training or policy changes by the D.O.C. that prohibit any continuation of the due process violations which are the subject of this litigation?

   RESPONSE: I have no knowledge of this.

5       Plaintiff provide his theory as to the correct accounting of his sentence in the original complaint. Where does your computations differ, note earned good time cannot (emphasis added) be taken without due process?

   RESPONSE: Sentence was calculated as sentencing Court/Judge set forth.

6       In your affidavit supporting the motion to dismiss, you state "The order did not state to grant time served in regard to the original sentence of 1993". What do you contend is the reason a V.O.P. sentence states "Reimposed", and the same criminal action number stays the identifying number throughout the case?

   RESPONSE: The 3rd V.O.P. in which Plaintiff was sentenced on in 1997 by Judge Alford stated, previous sentence "REVOKED" AND SENTENCE IS "REIMPOSED" AS FOLLOWS.

7       In June 1999 you brought the situation to the attention of Mary Page Bailey. Why was this proper step not undertaken sooner at the Plaintiff's request as required by logic?

   RESPONSE: It is not proper step to take to the Attorney General's Office when an inquiry is made by said Plaintiff. Proper proceedings would be to communicate with sentencing Judge and/or Pre-sentencing Officer of said Court, which was done.

_____          3/11/03
Rebecca L. McBride, DCC Records Supervisor     Date

Sworn and Subscribed before me this 11th day of March, 2003

_____
(Notary)

My Commission expires June 17, 2004

ROBERT SNYDER'S REPSONSES TO PLAINTIFF'S INTERROGATORIES

1. What procedures were in place post August 1998, that laid out the correct application of sentence calculations in respect to probation violation sentences?

   Response: Records staff follow Delaware code Title 11 section 3901,4381 and Bureau of Prisons policy 7.1 for sentence calculations.

2. Since there has been other cases where inmates have had their due process right violated or close to what has now been put into place to protect from any further reoccurrence?

   Response: I am unaware of any cases where inmates have had their due process right violated.

3. At what point in time and by what means were you made aware of Plaintiff's claim of violation of his rights, and what steps if any did you undertake to assist Plaintiff?

   Response: I received notification that Inmate Carter was questioning his sentence calculations from D.C.C Records Supervisor McBride on approximately May 26, 1999. I took no action because Information Resource manager Guessford was reviewing the matter.

4. Plaintiff entered into a hunger strike after notifying all defendants of his intentions. Plaintiff was forced to discontinue the strike due to threats of segregation. Was the forced denial of the Plaintiff's right to peaceful demonstration quelled per your order and second, why was no inquiry undertaken after Plaintiff took such a drastic action?

   Response: Plaintiff voluntarily chose not to go on a hunger strike per institution documentation.

5. Are there to your knowledge, policy, customs or practices in existence within the Delaware Correctional Center that by their existence deny due processes to inmates? If yes specify the same.

   Response: To my knowledge, there are no policies, customs or practices in existence with the Delaware Correctional Center that deny due process to inmates.

6. What if any procedures have you personally caused to protect inmates in your charge from illegal detention caused by noncompliance by your Records Department?

   Response: Records Staff are thoroughly trained in sentence calculation and double-check each other's calculations to ensure that calculations are correct and that sentence orders are followed.

*Robert E. Snyder*
Warden Robert Snyder, Retired

Sworn to and subscribed before me this ___5___ day of __March__, 2003

Notary Public

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SHERMAN CARTER )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COMMISSIONER STANLEY TAYLOR, )<br>et al., )<br>)<br>Defendants. ) | C.A. No. 99-757-JJF<br><br>TRIAL BY JURY DEMANDED |

**<u>AFFIDAVIT</u>**

STATE OF DELAWARE    )
                     (  SS
COUNTY OF NEW CASTLE )

BE IT REMEMBERED that on this 15th day of February, 2005, personably appeared before me, the Subscriber, a Notary Public for the State and County aforesaid, MEGAN CARLTON, personally known to me to be such and who, after being duly sworn by me according to law, did state and say the following:

1. I am employed by CiviGenics and am assigned to the Howard Young Correctional Facility (formerly known as Gander Hill Correctional Facility).

2. I perform various clerical duties in the CiviGenics program at the above facility.

3. In that capacity, I was instructed to perform a search for certain files related to a former inmate known as Sherman Carter (SBI #00102896). Said documents were believed to be located in the facility's archival storage room.

4. I conducted a thorough search of the archived storage room on or about Wednesday, February 2, 2005. Unfortunately, I was unable to locate the requested

PLAINTIFF'S
EXIBIT NO 21

documents.

5. I performed my search in a diligent and thorough fashion.

*[signature: Megan Carlton]*
MEGAN CARLTON

SWORN TO AND SUBSRIBED before me the day and year aforesaid.

*[signature]*
NOTARY PUBLIC

My Commission Expires: _____

**TYSHA Y. BRYANT**
**NOTARY PUBLIC**
**STATE OF DELAWARE**
My Commission Expires Oct. 24, 2005

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SHERMAN CARTER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 99-757-JJF |
| v. | ) | |
| | ) | TRIAL BY JURY DEMANDED |
| COMMISSIONER STANLEY TAYLOR, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

### AFFIDAVIT

| | |
|---|---|
| STATE OF DELAWARE | ) |
| | (    SS |
| COUNTY OF KENT | ) |

BE IT REMEMBERED that on this 18th day of February, 2005, personally appeared before me, the Subscriber, a Notary Public for the State and County aforesaid, JOHN OLDIGS, personally known to me to be such and who, after being duly sworn by me according to law, did state and say the following:

1. I am employed by the Delaware Department of Correction. My official title is Support Services Administrator for Management Services and in that capacity, I am involved, inter alia, with records management and archiving of same.

2. Pursuant to an e-mail request received from Deputy Attorney General Stuart B. Drowos, I initiated a search for the substance abuse and medical files for a former inmate known as Sherman Carter (SBI #00102896). Said records (primarily substance abuse materials) were believed to be archived, in part, at the Gander Hill Correctional Facility. The primary medical file, given the long-passed release date of the individual in question, was believed to still be retained by the medical unit at DCC, the

PLAINTIFF'S EXIBIT NO 72

institution from which Mr. Carter was released in 1999. These records are not in the custody or control of DOC but are in the sole custody and care of the medical provider/vendor with whom the State maintains a contractual relationship.

    3.    Under existing Federal law, the records would normally not be released without prior written authorization by Mr. Carter or, in lieu thereof, by an Order of any Court of competent jurisdiction.

    4.    Despite due diligence and effort, the requested records have not been located or provided by the medical care provider (and medical records custodian).

JOHN OLDIGS

SWORN TO AND SUBSRIBED before me the day and year aforesaid.

NOTARY PUBLIC

My Commission Expires: _____

My Commission Expires
August 18, 2005